**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4419-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROBERT Q. COOK, a/k/a
LITTLE RAH, ROBERT
QUENTIN COOK, and
ROBERT QUINTIN COOK,

    Defendant-Appellant.

_____

        Submitted March 9, 2020 – Decided March 23, 2020

        Before Judges Geiger and Natali.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 04-03-1113.

        Robert Cook, appellant pro se.

        Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Robert Cook appeals from an April 26, 2019 Law Division order denying his motion to correct an illegal sentence. We affirm substantially for the reasons stated in the cogent written opinion of Judge Mayra V. Tarantino, which we amplify with the following comments.

I.

On March 24, 2004, defendant was charged with first-degree knowing or purposeful murder, contrary to N.J.S.A. 2C:11-3(a)(1) or (2), third-degree unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5(b), and second-degree possession of a handgun for an unlawful purpose, contrary to N.J.S.A. 2C:39-4(a). The charges stemmed from the death of Reginald Taylor after he was shot in the head at point blank range while standing on a street in Irvington. Two eyewitnesses identified defendant, then nineteen-years old, as the shooter. After a jury trial, defendant was convicted on all counts.

On July 21, 2006, defendant was sentenced to a fifty-year custodial term, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant was also sentenced to concurrent terms of four years on the unlawful possession of a weapon conviction, and seven years on the possession of a handgun for an unlawful purpose conviction.

Defendant appealed and we affirmed his convictions and sentences but issued a limited remand to merge the possession of a weapon for an unlawful purpose conviction with the murder conviction. State v. Cook, No. A-0727-06 (App. Div. April 3, 2009) (Cook I). The Supreme Court denied certification. State v. Cook, 200 N.J. 207 (2009). Defendant also filed a pro-se petition for post-conviction relief (PCR) which the trial court denied. We affirmed, State v. Cook, No. A-3666-11 (App. Div. June 21, 2013), and the Supreme Court again denied certification. State v. Cook, 217 N.J. 53 (2014).

Defendant then filed the instant motion to correct an illegal sentence. He argued that N.J.S.A. 2C:11-3 was unconstitutional because it allowed for arbitrary and capricious sentencing for defendants convicted of first-degree murder, his sentence was grossly disproportionate because he was a youthful offender sentenced to the equivalent of life without parole, and he should be allowed to present evidence of his rehabilitation in a re-evaluation of the aggravating and mitigating factors applicable to his sentence.

Judge Tarantino denied defendant's motion in an April 26, 2019 order. In an accompanying written opinion, she found that "it was within [the sentencing judge's] discretion to sentence [defendant] to [fifty] years in prison, subject to [NERA]," and that "[t]he fact that other defendants have received greater or

3

lesser sentences for first[-]degree murder [was] irrelevant." Judge Tarantino further found that defendant's sentence was not "grossly disproportionate" as defendant was nineteen years old when he was sentenced and did not fall within the class of juvenile defendants protected by Graham v. Florida, 560 U.S. 48 (2010) and Miller v. Alabama, 567 U.S. 460 (2012). Finally, she concluded that defendant's rehabilitation efforts were not relevant to any of the exceptions set forth in Rule 3:21-10(b).

Defendant filed this appeal, raising the following arguments which largely mirrored those he made in the Law Division:

POINT I

DEFENDANT'S SENTENCE IS ILLEGAL AND UNCONSTITUTIONAL AND THEREFORE MUST BE SET ASIDE AND VACATED.

POINT II

[THE] TRIAL COURT ERRED WHEN IT FOUND DEFENDANT'S SENTENCE WAS NOT GROSSLY DISPROPORTIONATE AND THEREFORE IN VIOLATION OF THE UNITED STATES AND NEW JERSEY CONSTITUTIONS; THUS DEFENDANT'S SENTENCE IS ILLEGAL IN NATURE AND MUST BE CORRECTED.

4

POINT III

DEFENDANT SEEKS TO PRESENT EVIDENCE OF HIS REHABILITATION IN SUPPORT OF HIS MOTION TO CORRECT AN ILLEGAL SENTENCE.

II.

A petition to correct an illegal sentence can be filed at any time. R. 3:21–10(b)(5); State v. Zuber, 227 N.J. 422, 437 (2017); State v. Acevedo, 205 N.J. 40, 47 n.4 (2011). An illegal sentence is defined as one "not imposed in accordance with the law." Zuber, 227 N.J. at 437 (quoting Acevedo, 205 N.J. at 45). Whether a defendant's sentence is illegal or unconstitutional is "an issue of law subject to de novo review." State v. Drake, 444 N.J. Super. 265, 271 (App. Div. 2016) (citing State v. Pomianek, 221 N.J. 66, 80 (2015)).

III.

With respect to defendant's first argument, he maintains his sentence was both unconstitutional and illegal because the applicable sentencing statutes are ambiguous, his sentence is inconsistent with other defendants convicted of first-degree murder, and he was entitled to discovery with respect to his PCR claims. We disagree.

Contrary to defendant's claim, neither N.J.S.A. 2C:11-3(b)(1) nor N.J.S.A. 2C:43-7.2(d)(1) are unconstitutionally ambiguous. Defendant was

5

sentenced within the legal range for first-degree murder, as clearly prescribed by N.J.S.A. 2C:11-3(b)(1). Indeed, N.J.S.A. 2C:11-3(b)(1) provides that "a person convicted of murder shall be sentenced . . . to a specific term of years which shall be between [thirty] years and life imprisonment of which the person shall serve [thirty] years before being eligible for parole." (emphasis added). See also Cannel, N.J. Criminal Code Annotated, cmt. 4 on N.J.S.A. 2C:11-3 (2018) ("Murder has always been a crime of the first degree, and, as amended in 2007, the statute provides for only three sentences: [thirty] years without parole; a specific term of years between [thirty] years and life imprisonment, with [thirty] years required to be served before the person is eligible for parole; and life imprisonment without parole.").

There is nothing illegal under the circumstances here, which involved an execution-style murder, of the court imposing a fifty-year sentence subject to an 85% period of NERA parole ineligibility. As we noted when we affirmed defendant's sentence on direct appeal, "the trial judge's reasons for giving the sentence he imposed [were] well documented in the record and [were] limited to statutorily prescribed aggravating factors." Cook I, slip op. at 14.

We also find no support for defendant's claim that his sentence is illegal because other defendants convicted of first-degree murder received sentences

less than defendant's fifty-year custodial term.  As the trial court correctly observed, that other defendants received different sentences is "irrelevant" to the sentencing court's considered decision here.  Further, the record is devoid of any evidence regarding those other defendants' criminal histories or the facts and circumstances of their crimes.  Since the sentence in this case was within the statutory range for first-degree murder, the aggravating and mitigating factors were properly considered and supported by credible evidence, and the sentence is not shocking to our judicial conscience, it is not illegal.

IV.

We turn to defendant's next argument that his sentence was grossly disproportionate and violated both the Federal and State Constitutions primarily because he was a youthful defendant effectively sentenced to life-without-parole.  He contends that since he is "expected to live until age [sixty-four], [his] fifty . . . year sentence effectively amounts to life-without-parole, which is the second most severe penalty available."

In three landmark cases, the United States Supreme Court relied on scientific data to find that age is an important factor when assessing juvenile culpability at sentencing.  See Roper v. Simmons, 543 U.S. 551, 568-72 (2005); Graham, 560 U.S. at 68-69; Miller, 567 U.S. at 471-73.  In Roper, the Court held

7

that the Eighth Amendment protection against cruel and unusual punishment prohibits sentencing juveniles under eighteen years old to the death penalty. 543 U.S. at 568, 578. In <u>Graham</u>, the Court held that the Eighth Amendment also prohibits sentencing juveniles to life without parole for non-homicide offenses. 560 U.S. at 74-75. Finally, in <u>Miller</u>, the Court determined that a sentencing judge must consider youth-related factors "before concluding that life without any possibility of parole was the appropriate penalty." 567 U.S. at 479. The <u>Miller</u> Court stated that "although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." <u>Id.</u> at 480.

In <u>Zuber</u>, the New Jersey Supreme Court noted that "in the past decade, the United States Supreme Court has sent a clear message . . . : 'children are different' when it comes to sentencing, and 'youth and its attendant characteristics' must be considered at the time <u>a juvenile is sentenced to life imprisonment</u> without the possibility of parole." 227 N.J. at 429 (emphasis added) (quoting <u>Miller</u>, 567 U.S. at 465, 480). The Court approved consideration of a number of sentencing factors cited in <u>Miller</u> and held "that[ ] before a judge imposes consecutive terms that would result in a <u>lengthy overall</u>

term of imprisonment for a juvenile, the court must consider the Miller factors along with other traditional concerns."  Ibid. (emphasis added) (citing State v. Yarbough, 100 N.J. 627 (1985)).[1]

Zuber and the aforementioned federal cases that defendant primarily relies on have no impact on our review of his sentence as defendant was not a juvenile when he shot Taylor.  Indeed, he was a nineteen-year-old adult.  There is simply no legal basis for treating defendant as if he had been a juvenile, that is, under the age of eighteen, when he committed that crime.  See N.J.S.A. 2A:4A-22(a) (Code of Juvenile Justice definition of a juvenile as an individual under the age of eighteen).

V.

Finally, we address defendant's argument that evidence of his rehabilitation warrants a re-evaluation of the aggravating and mitigating factors applicable to his sentence.

As our Supreme Court held in State v. Randolph, 210 N.J. 330, 354 (2012), at a resentencing the sentencing court should consider all relevant

---

[1]  These factors include:  "'the mitigating qualities of youth' . . . including immaturity and 'failure to appreciate risks and consequences'; 'family and home environment'; family and peer pressures; 'an inability to deal with police officers or prosecutors' or the juvenile's own attorney; and 'the possibility of rehabilitation.'"  Zuber, 227 N.J. at 429 (quoting Miller, 567 U.S. at 478).

evidence and factors as of the day defendant stands before the court. Thus, a sentencing court may consider defendant's conduct and comportment, whether positive or negative, and defendant is entitled to bring to the court's attention any rehabilitative or other constructive measures he has taken since he was sentenced.

As discussed, however, defendant here is not entitled to a reevaluation of his sentence as it is not illegal. And, although we do not minimize defendant's laudable rehabilitation efforts after his convictions, evidence of those efforts has no bearing on whether his sentence was illegal or warrants resentencing pursuant to Rule 3:21-10(b)(5). As we stated in State v. Bass, 457 N.J. Super. 1, 14 (App. Div. 2018), "defendant's sentence is not illegal because he now claims to be rehabilitated as a result of his incarceration." Rather, consideration of a defendant's rehabilitation while incarcerated, "is exclusively the province of the parole board and not a means of collateral attack on defendant's sentence – which has been affirmed on direct appeal." Ibid.

## VI.

To the extent we have not addressed any of defendant's arguments, it is because we have determined that they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4419-18T4